**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**November 18, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-11176
_____

LIBERTY MUTUAL INSURANCE COMPANY and LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

Plaintiffs-Appellants

v.

GARDERE & WYNNE, L.L.P., A Texas Limited Liability Partnership,
JOHN C. NABORS, ESQ., Individually and as a Partner of Gardere &
Wynne, L.L.P. and GREGORY N. WOODS, ESQ., Individually and as a
Former Partner of Gardere & Wynne, L.L.P.,

Defendants-Appellees.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
(3:95-CV-1330-L)
--------------------

Before HIGGINBOTHAM, STEWART and PRADO, Circuit Judges.[1]

PRADO, Circuit Judge.

Appellants Liberty Mutual Insurance Company and Liberty

Mutual Fire Insurance Company (collectively "Liberty") appeal

from a summary judgment against them on their claims against

their former law firm, Gardere & Wynne ("Gardere"), and two of

Gardere's partners, John Nabors and Gregory Woods.[2]  Although we

---

[1]Pursuant to 5th Cir. R. 47.5, this Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

[2]Woods has since left the law firm.

certainly do not endorse the conduct of Gardere or its attorneys, we affirm.

Liberty had been a long-time client of Gardere & Wynne when Nabors and Woods joined Gardere as partners in 1992. At the time they joined Gardere, Nabors and Woods represented TransAmerican Natural Gas ("TANG") in litigation against one of Liberty's insureds and against Liberty itself. In this litigation, TANG alleged that Liberty participated in "the Armageddon Strategy," a conspiracy designed to destroy TANG's business. The suit also accused Liberty of insurance fraud. Gardere did not represent Liberty in the TANG lawsuit, but Nabors and Woods continued to represent TANG after they joined the firm.

When Liberty discovered this conflict, two of its representatives met with Nabors. During this meeting, Nabors promised to sever all claims against Liberty and to withdraw from the severed case. Nabors fulfilled this promise (although the parties disagree about Nabors' performance of other promises he allegedly made), and TANG's lawsuit against Liberty continued with different lawyers until it settled after five years.

Although Nabors and Woods withdrew from representing TANG in the suit against Liberty, Gardere continued to represent TANG in the litigation against all the other parties. Thus, although Gardere withdrew, Liberty alleges that the conflict continued because Nabors and Woods helped with prosecuting the suit against it. In particular, Liberty alleges that Nabors and Woods settled

2

with another defendant and convinced this defendant to sign an affidavit and turn over some of Liberty's privileged documents, that they forwarded these (and other) documents to TANG's new lawyers, that they made discovery requests about Liberty's involvement in the alleged conspiracy, and that Nabors appeared as TANG's corporate representative in a deposition during the TANG/Liberty suit. During this deposition, Nabors testified that Liberty had been part of a conspiracy that injured TANG.

Liberty sued Gardere, Nabors, and Woods, alleging that their representation of TANG in the Liberty lawsuit and in the related TANG lawsuits violated the fiduciary duty they owed Liberty as a client. As damages, Liberty sought the defense costs it incurred during the litigation with TANG as well as the amount it paid to settle the lawsuit. Liberty also asked that Gardere be required to disgorge fees -- not the fees that Liberty paid to Gardere, but rather the fees that TANG paid the firm in pursuing the related litigation.

The district court granted summary judgment on Liberty's damages claims, ruling that Liberty could not show a fact question that the breach of fiduciary duty proximately caused its injuries. The district court also determined that, as a matter of law, Liberty could not recover the fees TANG paid Gardere. After granting summary judgment on these issues, the district court entered final judgment in the case.

Liberty raises three issues on appeal. First, it argues

3

that the district court improperly required it to present evidence of proximate cause for its actual damages. Second, it argues that, contrary to the district court's ruling, it presented evidence sufficient to survive summary judgment on causation. Finally, it argues that the district court erred by ruling that Gardere could not be ordered to forfeit the fees that it received from TANG during the litigation.

We review the district court's grant of summary judgment *de novo*. <u>Hanks v. Transcon. Gas Pipe Line Corp.</u>, 953 F.2d 996, 997 (5th Cir. 1992). In this review, we use the same standards as the district court. <u>Id</u>*.* Under these standards, a movant is entitled to summary judgment if he can show the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law. <u>Id</u>. In reaching this determination, we are to view all evidence in the light most favorable to the non-movant. <u>Id</u>.

<u>Causation</u>

Liberty initially argues that, contrary to the district court's conclusions, proximate cause is not an element it must prove to recover actual damages for breach of fiduciary duty.[3]

---

[3] The district court called Liberty's claim "legal malpractice." Texas courts distinguish between legal malpractice claims and breach of fiduciary duty claims; this distinction depends on the source and kind of duty that the lawyer allegedly breached. If a claim, regardless of what it is called, involves a lawyer's performance in representing a client, then it is a legal malpractice claim. <u>Goffney v. Rabson</u>, 56 S.W.3d 186, 190 (Tex. App. – Houston [14th Dist.] 2001, pet. denied). If a claim involves a lawyer's "integrity and fidelity," then it is a breach

In essence, Liberty argues, contrary to this Court's precedent, that it has no burden to prove any causation of its damages at all.

Not all forms of recovery require a client who is suing his attorney to prove that the attorney's actions caused the client injury. In Burrow v. Arce, 997 S.W.2d 229 (Tex. 1999), the Texas Supreme Court determined that, in a breach of fiduciary duty case, an attorney may be required to forfeit some amount of the fees his client paid regardless of whether the client can prove that the attorney's breach caused harm. Burrow's holding, though, only applies to forfeiture, not to claims for actual damages. To recover damages, a plaintiff must still prove causation. In re Segerstrom, 247 F.3d 218, 225 n.5 (5th Cir. 2001) ("injury and causation are still required when a plaintiff seeks to recover damages for a breach of fiduciary duty")(emphasis added); Two Thirty Nine Joint Venture v. Joe, 60 S.W.3d 896, 905-6 (Tex. App. – Dallas 2001, pet. granted).

To get around this distinction, Liberty argues that Lesikar v. Rappeport, 33 S.W.3d 282 (Tex. App. – Texarkana 2000, pet. denied), eliminates any proximate cause requirement. The Lesikar court held that a jury charge for a breach of fiduciary duty did

---

of fiduciary duty claim. Kimleco Petroleum, Inc. v. Morrison & Shelton, 91 S.W.3d 921, 923 (Tex. App. – Fort Worth 2002, pet. denied). We agree with Liberty that its claim, which only involves the loyalty of a law firm to its client, alleges breach of fiduciary duty, not malpractice.

not have to include a question about the proximate cause of actual damages.  Despite this holding, <u>Lesikar</u> does not help Liberty's argument.

Proximate cause consists of two elements: foreseeability and cause-in-fact.  <u>Lee Lewis Constr., Inc. v. Harrison</u>, 70 S.W.3d 778, 784 (Tex. 2001).  The <u>Lesikar</u> court held that actual damages were presumed to have been foreseen.  <u>Lesikar</u>, 33 S.W.3d at 305.  Because of this presumption, the jury did not have to determine foreseeability.  <u>Id</u>.  Nowhere does the <u>Lesikar</u> court hold that the jury does not have to determine causation.  To the contrary, the jury charge in <u>Lesikar</u> read "what amount of damages do you find *resulted from* the breach of fiduciary duty?"  (emphasis added).  <u>Id</u>.  Thus, even under <u>Lesikar</u>, a plaintiff in a breach of fiduciary duty case still must prove that the breach caused its harm before it can recover actual damages for that harm.

<u>Causation evidence</u>

After striking two paragraphs of Liberty's expert report, the district court determined that Liberty had not produced evidence showing a fact question concerning causation.  Liberty challenges that decision, first arguing that its expert's affidavit was proper and also arguing that it produced additional "common sense" evidence of causation.

<u>Expert's affidavit</u>

The district court determined that two paragraphs of the

expert report prepared by Liberty's expert Charles Herring were too conclusory to be summary judgment evidence. This decision can only be reversed if manifestly erroneous. <u>Hayter v. City of Mount Vernon</u>, 154 F.3d 269, 273-74 (5th Cir. 1998).

The two paragraphs at issue both concern causation:

17. In light of the relatively low value of TANG's claims against Liberty, it is my opinion that, without the substantial and often surreptitious efforts of Nabors and Gardere in taking action adverse to Liberty (as described, in part, in Paragraph 15, above), it is more probable than not that TANG's claims against Liberty would have been resolved sometime in 1992 or early 1993, at little or no cost to Liberty. However, as a result of Nabors's and Gardere's efforts, Liberty was forced to expend millions of dollars and thousands of man-hours in the course of years of litigation defending itself against TANG's claims, all but one of which were ultimately dismissed before trial.

18. It is also my opinion that Nabors, because of his unique historic close relationship with TANG and its principal, John R. Stanley and because of his special strategic role in developing and orchestrating TANG's litigation strategy, continued to pursue meritless claims against Liberty that another lawyer, unburdened by the conflict, would not have pursued. Nabors and Gardere had a huge financial incentive to pursue frivolous litigation on behalf of TANG. Gardere was in dire financial condition at the time of Nabors's arrival. Nabors brought with him the promise of millions in fees as a result of his relationship with TANG. It is my opinion that Nabors and Gardere, therefore, had a personal economic motivation to pursue meritless claims that another lawyer, acting independently, would not have done.

The district court concluded that Herring's affidavit failed to provide a factual basis for his conclusions in these two paragraphs. The district court further pointed to statements in Herring's deposition that he did not know whether the wrongful

7

discovery, for example, actually caused Liberty to incur more fees.

An expert's opinion is proper summary judgment evidence if it provides a sufficient basis for its conclusions –  in other words, if it provides the factual basis from which it draws its conclusions and the reasoning behind these conclusions.  Boyd v. State Farm Ins. Co., 158 F.3d 326, 331 (5th Cir. 1998).  As this factual basis, Liberty initially points to the lengthy description in Herring's affidavit of Nabors and Woods' actions against Liberty.  Although these actions sufficiently support Herring's conclusion that Appellees breached their fiduciary duty to Liberty, they do not provide any factual basis for Herring's causation conclusions contained in Paragraphs 17 and 18.

As additional factual support, Liberty also points to paragraph 16 of Herring's affidavit, which states that he understands that in March 1992,  Nabors admitted that the claims against Liberty were "incidental" and "of little value" and that those claims would "go away."  In paragraph 16, Herring also emphasizes the amount for which the claims ultimately settled, which was less than .05% of the amount TANG originally requested as damages.  But these facts, too, fail to support Herring's conclusions about causation.  Herring's stated facts do not connect the breach with the harm; for example, that Nabors might have viewed these as low-dollar claims does not necessarily mean

8

that another attorney would not have pursued them.

Finally, Herring's affidavit describes Gardere's financial trouble and attempts to provide a connection between the breach and the harm. Nevertheless, the affidavit provides no indication that pursuing "meritless" claims against Liberty would be any financial benefit to Gardere. After all, Gardere withdrew from the actual suit against Liberty. Herring's affidavit also does not contain information about any amount of financial benefit that Gardere might have gained from the discovery in the other suits. In light of these problems, Herring's description of Gardere's financial difficulties cannot form the basis for his conclusions about causation.

Because of the affidavit's failure to provide a factual basis for its conclusions, the district court's decision to strike two paragraphs of Herring's affidavit was not manifest error.

Other evidence of causation

Liberty emphasizes several actions that it claims caused it harm. In arguing that the district court erred by disregarding these actions, Liberty points to its evidence of a breach, but fails to point to evidence of causation. For example, Liberty first discusses Gardere's actions in forwarding TANG's new counsel the allegedly privileged documents they obtained from the settlement. Liberty also points to Nabors' actions in serving discovery, not directed at Liberty, but designed to implicate

9

Liberty.  Finally, Liberty emphasizes Nabors' appearance as Liberty's corporate representative at the deposition where Nabors testified that Liberty had been part of a conspiracy with its insured.  While these actions might not serve as  models for the way lawyers should behave, Liberty has failed to produce any evidence linking these actions to increased expenses.  Liberty draws no connection between these actions and the litigation costs it incurred, but only makes what it calls a "common sense" argument that Nabors' actions were intended to cause the litigation. Liberty points to no direct or circumstantial evidence, except for its expert reports, that it attached to its summary judgment response that would indicate that these actions increased the cost of litigation, the extent to which these activities might have increased the cost of litigation, or that litigation would not have proceeded but for these breaches. The district court properly concluded that Liberty did not establish a fact question concerning causation.

Fee Forfeiture

A client does not have to prove either causation or injury to be entitled to fee forfeiture as a remedy for an attorney's breach of fiduciary duty.  Burrow v. Arce, 997 S.W.2d 229 (Tex. 1999).  Liberty's difficulties in establishing causation, then, are meaningless when it comes to fee forfeiture.  In contrast to the usual case, however, Liberty has not requested forfeiture of any amounts it paid to Gardere.  Instead, Liberty asks that

10

Gardere forfeit the fees it earned representing TANG in all of the related lawsuits.  We agree with the district court that Texas law does not permit this recovery.

As the Texas Supreme Court noted in Burrow, forfeiture is based on two ideas.  First, the client is considered not to have received what he bargained for if the attorney breaches his fiduciary duties while representing the client.  Burrow, 997 S.W.2d at 237-38.  Second, fee forfeiture is designed to discourage attorneys from being disloyal to their clients or "to protect relationships of trust by discouraging agents' disloyalty."  *Id.* at 238.  In this case, Liberty and Gardere each emphasize one of the two rationales.  Because Liberty is not asking for forfeiture of the fees it paid to Gardere, Gardere correctly argues that forfeiting the fees earned from TANG makes no sense under the first, contract-based justification for forfeiture. In making this argument, Gardere ignores the potential deterrent effect. Liberty, on the other hand, focuses heavily on deterrence as a justification for the forfeiture it requests.

In emphasizing the deterrent argument, Liberty mostly cites non-attorney cases for the proposition that a fiduciary must account for all gains obtained in violation of fiduciary duties, even when those gains come from third parties.  See, e.g.,Watson v. Limited Partners of WCKT, Ltd., 570 S.W.2d 179 (Tex. Civ. App.

11

– Austin, 1978, writ ref'd n.r.e)(partner must account for gains); <u>Anderson v. Griffith</u>, 501 S.W.2d 695 (Tex. Civ. App. – Fort Worth 1973, writ ref'd n.r.e) (broker). Liberty argues, citing *Burrow*, that there is no reason to exempt attorneys from this general rule of Texas law.

Yet Liberty's argument ignores the careful creation of the forfeiture remedy in <u>Burrow</u>.  The Texas Supreme Court in <u>Burrow</u> balanced the relevant policies and considered the general principles of fiduciary law when determining that an attorney may, even in the absence of damages, sometimes be required to return a client's fees.  <u>Burrow</u>, 997 S.W.2d at 237-40.  The <u>Burrow</u> court then set out several factors for determining when forfeiture is appropriate.  <u>Id</u>. at 241-45.  <u>Burrow</u>, thus, provides a flexible and adequate remedy.  Further addition to <u>Burrow</u>'s remedial scheme is unwarranted.  We conclude that Liberty's expansion of the <u>Burrow</u> rule is not one that Texas courts would adopt. We therefore, hold that the district court did not err in refusing to allow forfeiture of fees paid by other clients, particularly when the client could have chosen to seek forfeiture of the fees that it paid.
AFFIRMED.