**Affirmed and Opinion filed March 21, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00197-CV

## MARTHA A. GREGORY D/B/A WORKZONE TECHNOLOGIES, Appellant,

## V.

## PORTER & HEDGES, LLP, Appellee

**On Appeal from the 269th District Court**
**Harris County**
**Trial Court Cause No. 2008-07491**

## O P I N I O N

In this case, appellant Martha A. Gregory d/b/a Workzone Technologies ("Workzone") sued appellee Porter & Hedges, LLP ("P&H"), a law firm, for breach of fiduciary duty. Workzone alleges the breach occurred during P&H's representation of Workzone in another piece of litigation. A unanimous jury returned a verdict in favor of P&H, and the trial court entered a take-nothing

judgment against Workzone. We affirm.

I

Contractor Technology, Inc. ("CTI") was the general contractor on a number of public-works projects in Houston, including two road-construction projects. St. Paul Fire and Marine Insurance Company was the surety company on the bond securing payments for labor and material furnished in those projects. CTI subcontracted some of the labor to Workzone, and Workzone, in turn, hired Ken Shepherd as the project manager. During the course of the projects, however, problems arose between Workzone and CTI. CTI ultimately terminated the subcontract with Workzone and subcontracted the remaining work to another company, which Workzone argued constituted a breach of CTI's obligations under the contracts.

On January 26, 2004, Shepherd retained Allison Snyder at P&H to represent Workzone,[1] and Snyder began sending bond-claim letters to both CTI and St. Paul on Workzone's behalf. After three months of representation, Workzone had yet to pay any of P&H's monthly invoices. On April 29, Snyder faxed Gregory and Shepherd requesting payment and attached invoices reflecting an unpaid balance of $9,486.42. The following day, Shepherd left Snyder a handwritten note asking her to release Workzone's file to attorney Tom Valega at the law firm of Hirsch &

---

[1] Shepherd initially held himself out as the owner of Workzone, and he signed the Professional Services Agreement with P&H as, "Ken Shepherd d/b/a Workzone." On January 30, he revealed that Gregory owned Workzone. Snyder spoke with Gregory on the phone and emailed her a revised agreement to be signed "Martha Gregory d/b/a Workzone," but Gregory never returned it. Although Gregory had executed a written authorization on February 24, 2004, which gave Shepherd "full authority to sign affidavits, make decisions and represent Workzone Technology in its claims against CTI and the surety," there is no evidence this document ever came to Snyder's attention. Nevertheless, it is undisputed that P&H and Workzone agreed to be bound by the terms of that contract.

2

Westheimer ("H&W").[2]

In June of 2004, while represented by Valega, Workzone sued CTI and St. Paul. CTI filed a counterclaim, alleging Workzone breached the contracts by failing to perform pursuant to the agreed-upon terms and standards. On April 8, 2005, after representing Workzone for eleven months, H&W withdrew from its representation due to Workzone's failure to pay any of H&W's invoices. On April 21, 2005, CTI and St. Paul filed a joint no-evidence motion for summary judgment, and a hearing was set for May 13, 2005.

On May 12, 2005, about one year after terminating P&H's first representation, Shepherd contacted Snyder and attempted to retain P&H on Workzone's behalf for the second time. Shepherd told Snyder that a summary-judgment hearing was set for the following morning but that he did not think Workzone had received proper notice of it. Snyder refused to help Workzone until the outstanding balance from P&H's prior representation was paid in full. Nevertheless, Snyder explained that Shepherd was correct about the improper notice.[3] Workzone was entitled to 24 days' notice of the hearing but had been given only 21 days' notice.

Later that afternoon, Shepherd filed a motion for a continuance on Workzone's behalf, requesting additional time to retain an attorney. He also appeared at the hearing the following morning, but, because he was neither an attorney nor a party, he was not entitled to participate. The trial court ultimately granted the motion, ordering that Workzone take nothing and further ordering a

---

[2] At the end of this note, Shepherd wrote, "P.S. We need to discuss your bill ASAP." But P&H received no other communications from Shepherd or Gregory to suggest there was a dispute about the invoices.

[3] Because the motion had been mailed, Workzone was entitled to 24 days' notice of the hearing but had been given only 21 days' notice. Tex. R. Civ. P. 21a.

money judgment against Workzone for CTI's counterclaim. That afternoon, Shepherd returned to P&H, gave Snyder a $10,000 check from Workzone in satisfaction of the unpaid invoices, and retained P&H's services for the second time. That same day, CTI filed for Chapter 11 bankruptcy, which immediately triggered an automatic stay.

Snyder, again working on Workzone's behalf, filed a motion for new trial as to St. Paul based on the insufficient notice, but the automatic stay prohibited further legal action against CTI. Accordingly, Thomas Woolley, a P&H associate, filed a motion for relief from the stay, which Bankruptcy Judge Marvin Isgur granted on August 15, 2005. Nevertheless, a motion for new trial as to CTI was never filed.

In the interim, Judge Isgur had converted CTI's bankruptcy to a Chapter 7 liquidation and appointed a trustee of CTI's estate to administer the process. The trustee filed an application to employ P&H as special litigation counsel for the purpose of identifying and analyzing potential claims owned by the bankruptcy estate. The trustee attached P&H's proposed engagement agreement and an affidavit in which P&H disclosed that it represented eight of CTI's creditors, including Workzone, in the bankruptcy proceeding. But P&H did not disclose the fact that CTI had a judgment against Workzone, which had become an asset of the bankruptcy estate, nor did it mention Workzone's pending motion for relief from the stay. On August 17, 2005, Judge Isgur granted in part and denied in part the trustee's application, allowing the trustee to employ P&H as special litigation counsel but prohibiting P&H from providing "any analysis, evaluation, recommendation or input to the Trustee with respect to the Eight P&H Clients."

In the months that followed, P&H continued representing Workzone but was consistently unsuccessful in its attempts to communicate with Gregory and

4

Shepherd regarding the proceeding. Further, all of P&H's invoices remained unpaid. Ultimately, P&H filed a motion to withdraw from its representation of Workzone in the bankruptcy case, which Judge Isgur granted on February 13, 2006.[4]

Two years later, Workzone sued P&H, alleging, among other things, that P&H breached its fiduciary duty to Workzone by failing to disclose the conflict of interest that arose when P&H undertook representation of the trustee. Workzone sought fee forfeiture of the $10,000 it paid P&H as well as the more than $1 million paid by the trustee. P&H filed a motion for partial summary judgment, asserting that Workzone was precluded as a matter of law from seeking forfeiture of fees paid by a third party. The judge granted the motion, limiting the amount of fees subject to potential forfeiture to $10,000. Ultimately, following a trial on the merits, a unanimous jury found in favor of P&H, and the judge signed a take-nothing judgment against Workzone.

Workzone appeals, arguing the evidence is legally and factually insufficient to support the jury's "no" answer to Question 4 asking whether P&H failed to comply with its fiduciary duty to Workzone. Additionally, Workzone argues the trial court erred by granting the motion for partial summary judgment. We affirm.

II

On appeal, Workzone contends that the trial court erred in granting P&H's motion for partial summary judgment. Specifically, Workzone argues it is not precluded as a matter of law from seeking forfeiture of the fees paid by the trustee.[5]

---

[4] To support its motion to withdraw, P&H cited Workzone's failure and refusal to communicate and cooperate with P&H with respect to the litigation, as well as Workzone's failure to pay any of P&H's invoices. Because Judge Isgur found Workzone's failure to communicate sufficient to justify withdrawal, he granted P&H's motion on that basis alone.

[5] Within this argument, Workzone also alleges that the trial court improperly limited

In response, P&H primarily argues the trial court did not err in granting the motion for partial summary judgment. Additionally, P&H contends there are no fees subject to forfeiture in this case because the $10,000 was compensation for P&H's first representation, and Workzone did not pay P&H any fees for the second representation, during which the alleged breach occurred. We agree with P&H on both points.

A

An attorney who commits a clear and serious breach of her fiduciary duty to her client may be required to forfeit some or all of her compensation for the matter. *Burrow v. Arce*, 997 S.W.2d 229, 241 (Tex. 1999); *see* Restatement (Third) of The Law Governing Lawyers § 37 (2000). Fee forfeiture is an equitable remedy and does not require proof that the breach of fiduciary duty caused any damages. *Burrow*, 997 S.W.2d at 240; *Swank v. Cunningham*, 258 S.W.3d 647, 672–73 (Tex. App.—Eastland 2008, no pet.). The basis for the remedy is twofold. First, an attorney's compensation is not only for specific results but also for loyalty, and an attorney who breaches her fiduciary duty to a client has not provided the bargained-for loyalty on which her right to compensation is based. *Burrow*, 997 S.W.2d at 237–38; Restatement (Third) of The Law Governing Lawyers § 37, cmt. b ("The remedy of fee forfeiture presupposes that a lawyer's clear and serious violation of a duty to a client destroys or severely impairs the client–lawyer relationship and thereby the justification of the lawyer's claim to compensation."). Second, fee forfeiture is a deterrent in that it removes the incentive for an attorney

---

Workzone's ability to present evidence of the amount of compensation P&H received for its work on behalf of the trustee. But Workzone was subject to no such limitation. Rather, in the trustee's final report, which Workzone and P&H offered as a joint exhibit, the trustee recorded the exact amount of every payment made to P&H. To the extent Workzone suggests the trial court's ruling on the motion for partial summary judgment had the effect of limiting its ability to introduce evidence, we disagree.

to take personal advantage of her position of trust in every situation, whether the client is injured or not. *Burrow*, 997 S.W.2d at 238; Restatement (Third) of The Law Governing Lawyers § 37, cmt. b.

B

In challenging the trial court's ruling, Workzone cites *Kinzbach v. Corbett-Wallace Corp.* for the proposition that "if the fiduciary 'takes any gift, gratuity, or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received.'" 160 S.W.2d 509, 574 (Tex. 1942) (quoting *United States v. Carter*, 217 U.S. 286, 306 (1910)). But *Kinzbach*, which involved a general fiduciary duty in an employee–employer relationship, does not control this case.

This court has specifically held that plaintiffs seeking forfeiture of attorneys' fees are not entitled to recover fees paid by a third party. *Elizondo v. Krist*, 338 S.W.3d 17, 25 (Tex. App.—Houston [14th Dist.] 2010, pet. granted). As this court noted in *Elizondo*, "a requirement that a lawyer who represents conflicting interests must disgorge 'all pay' does not necessarily lead to the conclusion that one client may be awarded the fees paid by the other client." *Id.* at 24. Rather, "the attorney must disgorge to each client the fees that each client paid to the lawyer." *Id.*; *see Liberty Mut. Ins. Co. v. Gardere & Wynne, L.L.P.*, 82 Fed. Appx. 116, 121 (5th Cir. 2003) (holding that forfeiture of another client's fees paid to attorneys, even in related matters, is an improper extension of *Burrow v. Arce*); *Swank*, 258 S.W.3d at 673–74 (concluding that allowing appellants who did not pay any legal fees to the appellee lawyers to recover fees paid to the lawyers by another party would result in an improper "windfall" result, which equity does not support). Further, as our supreme court has instructed, fee forfeiture is only available for "clear and

serious" violations of a lawyer's fiduciary duty, and even then, total fee forfeiture is not always appropriate. *Burrow*, 997 S.W.2d 241-42; *see also Elizondo*, 338 S.W.3d at 24–25.

Therefore, we conclude that the trial court did not err by granting P&H's motion for partial summary judgment. A client seeking  forfeiture of an attorney's fees is not entitled to recover fees paid by another party, and it is not for this court to change well-settled law. We overrule Workzone's third issue.

C

P&H further argues that Workzone is not entitled to recover the $10,000 it paid for P&H's first representation, emphasizing  that "P&H was never paid for the legal services it performed during its second representation of Workzone, when the alleged conflict of interest arose and the alleged breach of fiduciary duty occurred." Accordingly, P&H contends, "even had the jury answered the breach of fiduciary duty question differently, Workzone should not have been entitled to the forfeiture of any fees at all." We agree.

As previously explained, one basis for the remedy of  fee forfeiture is that "an agent's compensation is not only for specific results but also for loyalty," and therefore an attorney who breaches her fiduciary duty to a client has not provided the bargained-for loyalty on which the right to compensation is based. *Burrow*, 997 S.W.2d at 237–38; Restatement (Third) of The Law Governing Lawyers § 37, cmt. b. With that in mind, it is highly relevant that, in this case, Workzone retained P&H on two separate occasions: once from January through April of 2004 and again beginning in May 2005. It is undisputed that Workzone's $10,000 payment, despite being made in May 2005, was compensation for the legal services P&H

provided during its *first* representation in 2004.[6]

It is also undisputed that Workzone's claims against P&H relate exclusively to the *second* representation. And, in this case, the two representations were clearly distinct: Shepherd terminated the first representation in writing and retained another firm to take over the legal services previously being performed by P&H. Further, in its motion for continuance filed May 12, 2005, Workzone specified that it "was represented by an attorney named Tom Valega, at Hirsch & Westheimer, P.C." until April of 2005; that Workzone "was not represented by counsel" when CTI and St. Paul filed the motion for summary judgment; and that at that time, Workzone was "working on finding counsel to replace Mr. Valega and ha[d] contacted at least two attorneys. No arrangements [had] been made as of [that] time." P&H's second representation began the following day when the parties executed a new contract.

Therefore, we conclude that P&H and Workzone had two distinct attorney–client relationships. Workzone does not dispute that P&H fully performed its obligations, including its fiduciary duties, pursuant to the first representation. P&H was thus entitled to full compensation for those services. It is also undisputed that Workzone paid no fees for P&H's second representation, when the conflict and breach allegedly occurred. Therefore, there are no fees subject to the forfeiture that Workzone seeks. *See Elizondo*, 338 S.W.3d at 24–25. Having made this determination, we need not address Workzone's sufficiency challenges.

---

[6] Shepherd and Snyder both testified that when Shepherd returned to P&H seeking representation in May 2005, Snyder refused to undertake representation of Workzone until Workzone fully paid P&H's invoices from its previous representation. Shepherd testified that he called Gregory and told her what Snyder said, and Gregory told him to write P&H a check on Workzone's behalf in the amount of the unpaid invoices. Further, on the face of the check, Shepherd wrote that it was payment for "Deposit For All Previous Invoices to Date."

\* \* \*

For the aforementioned reasons, we affirm the trial court's judgment.

/s/    Jeffrey V. Brown
       Justice

Panel consists of Justices Frost, Brown, and Boyce.