**Affirmed in part, Reversed in part, Rendered in part, and Remanded, and Opinion Filed December 14, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00308-CV**

**JULES S. BRENNER; CLARK HILL PLC ALSO DOING BUSINESS AS CLARK HILL STRASBURGER; AND STRASBURGER & PRICE, LLP,** Appellants
**V.**
**CENTURION LOGISTICS LLC DIRECTLY AND DERIVATIVELY ON BEHALF OF CENTURION PECOS TERMINAL LLC,** Appellee

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-15964**

## MEMORANDUM OPINION

Before Justices Whitehill, Schenck, and Browning
Opinion by Justice Whitehill

Appellee Centurion Logistics LLC sued appellants, its former lawyer and his law firm,[1] for fiduciary breach, alleging that they worked against Centurion Logistics' interests both before and during an underlying lawsuit Centurion Logistics filed against third parties. Appellants filed a Texas Citizens Participation Act

---

[1] The record indicates that Clark Hill PLC and Strasburger & Price, LLP merged in 2018, and Brenner worked for Strasburger before the merger and Clark Hill afterwards.

dismissal motion. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. The trial court denied the motion, and appellants filed this interlocutory appeal. *See id.* § 51.014(a)(12).

We conclude that the trial court erred by failing to dismiss Centurion Logistics' claims to the extent they are based on appellants' participation in the underlying lawsuit. But the trial court correctly denied appellants' TCPA motion to the extent Centurion Logistics' claims are based on appellants' other conduct. So we reverse in part and affirm in part.

## I. BACKGROUND

### A. Alleged Facts

Unless otherwise noted, the following facts are alleged in Centurion Logistics' live pleading. All quotations come from that pleading.

#### 1. Centurion Logistics' Business Plan and the Descent into Litigation

Marc Marrocco, Tony Albanese, and John Calce had a business idea: develop a railway terminal in the Pecos, Texas area to serve oil and gas producers in the Permian Basin. In September 2013, they formed appellee Centurion Logistics as the vehicle for this plan and made themselves Centurion Logistics' managers. In February 2014, Centurion Logistics entered into a contract to buy a tract in Reeves County near Pecos. That spring it sought equity investors for the project.

No later than March 2014, Centurion Logistics hired appellant Jules Brenner and his law firm, appellant Strasburger & Price, LLP, to represent Centurion

Logistics in all of its corporate, transactional, and litigation matters. Brenner provided legal services regarding negotiations with potential equity partners for the project.

In June 2014, Centurion Logistics obtained a Memorandum of Understanding (MOU) from Union Pacific Railroad regarding the rail terminal.

Calce introduced Marrocco and Albanese to a potential equity partner named James Ballengee, and Centurion Logistics decided to go with Ballengee.

In September 2014, Centurion Logistics and a Ballengee company jointly formed Centurion Pecos Terminal LLC (CPT). Brenner and his firm did the legal work for Centurion Logistics on the CPT company agreement.

Brenner later represented Centurion Logistics in revising the CPT company agreement. The revised CPT company agreement was signed in or about August 2015, and CPT's two members and managers were Centurion Logistics and a Ballengee company called Stampede.

By late October 2015, Marrocco and Albanese were suspicious of Calce's and Ballengee's intentions regarding the project. Around that time, Calce told Marrocco that (i) Ballengee was working on a bigger plan than Centurion Logistics had envisioned, (ii) Centurion Logistics should "trade up" into Ballengee's plan, and (iii) Ballengee would strip Centurion Logistics of its interest in the project if Centurion Logistics didn't "play ball."

In November 2015, Calce said Marrocco and Albanese needed to talk to Ballengee about how to resolve the conflict. Marrocco and Albanese later had conversations with Ballengee about the project and Centurion Logistics' place in it.

In March 2016, Ballengee met with Marrocco, offered Centurion Logistics 4% of Ballengee's new plan, and "guaranteed Centurion Logistics $15 million in that project." Ballengee asked Marrocco to discuss it with Albanese and then give Ballengee a formal offer or counter-proposal.

Marrocco and Albanese decided that they were prepared to accept Ballengee's offer but would first make a counter-offer seeking an $18 million guarantee. But when Marrocco went to an April 1, 2016 meeting to finalize the deal with Ballengee, he was confronted with a purported meeting of CPT's members and managers at which Calce and Ballengee sought his support for a different transaction involving CPT. Marrocco "withdrew from the meeting."

After that meeting, Calce, Ballengee, and their entities performed "maneuvers and transactions" designed to strip Centurion Logistics and CPT of their interests in project assets. For example, they attempted to divest (i) Centurion Logistics of its Union Pacific MOU and (ii) Centurion Logistics and CPT of the rail site land.

In June 2016, Centurion Logistics sued Calce, Ballengee, Stampede, and others in Dallas County (the Underlying Lawsuit) to stop any further damage to Centurion Logistics. Centurion Logistics' live pleading also alludes to other lawsuits involving the same parties, presumably pending around this same time.

## 2. Appellants' Alleged Misconduct

Centurion Logistics alleges that appellants were involved in the events described above and breached fiduciary duties to Centurion Logistics both before and after the Underlying Lawsuit began.

### a. Acts Before and Apart from the Underlying Lawsuit

Centurion Logistics alleges three acts whereby appellants were "fanning the flames" of conflict between Centurion Logistics and the other parties to the project before the Underlying Lawsuit was filed.

First, appellants aided Calce and Ballengee with their scheme against Centurion Logistics by helping them form, organize, or reorganize numerous business entities. Brenner helped one such entity, Centurion Terminals, LLC, in all its deals and contractual arrangements.

Second, in spring 2016, appellants were involved in an attempt by Calce, Ballengee, and their entities to divest Centurion Logistics of its Union Pacific MOU and a more comprehensive rail services agreement Centurion Logistics and Union Pacific had struck in February 2016.

Third, appellants helped a Calce entity acquire a company called Permian Crude Transport that owned land adjacent to the tract where Centurion Logistics' original rail terminal project was to be located. This acquisition conflicted with appellants' earlier work on Centurion Logistics' and CPT's behalf. Although the acquisition occurred in 2017 and thus after the Underlying Lawsuit began, Centurion

Logistics' live pleading doesn't suggest any connection between the acquisition and the Underlying Lawsuit or its outcome.

### b. Misconduct Relating to the Underlying Lawsuit

Centurion Logistics alleges appellants committed the following acts regarding the Underlying Lawsuit.

In July 2016, Brenner and others at his firm began to work for opposing parties involved in the Underlying Lawsuit without disclosing this fact to Centurion Logistics. In February 2017, Marrocco and Albanese did not oppose the firm's substituting in as counsel for Stampede based on the firm's representation that Brenner had no involvement in the case and would not work on it. But subsequent fee requests by the firm showed that Brenner worked on the case in January 2017 and thereafter.

Also in or before 2017, Brenner and his firm drafted a "Unanimous Written Consent" that purported to allow (i) Stampede to remove Centurion Logistics as a CPT member and (ii) CPT to dismiss derivative claims filed in the Underlying Lawsuit.

Finally, during the Underlying Lawsuit defense counsel told Centurion Logistics that Brenner had given them confidential information about a 2014 meeting of Marrocco, Albanese, Calce, and Brenner. Defense counsel also said that Brenner would testify about those facts in the Underlying Lawsuit or another related lawsuit. Brenner's conduct was detrimental to Centurion Logistics.

### 3. The Underlying Lawsuit's Conclusion

Appellants filed evidence with their TCPA dismissal motion showing that (i) Centurion Logistics' claims in the Underlying Lawsuit were dismissed on pretrial motions, (ii) the counterclaims against Centurion Logistics were settled, and (iii) the Underlying Lawsuit ended in July 2019.

### B. This Case's Procedural History

In September 2019, Centurion Logistics sued appellants for fiduciary breach and sought damages and equitable forfeiture remedies.

Appellants answered and later filed their TCPA dismissal motion.

Centurion Logistics filed an amended petition and a response to the TCPA motion with evidence. The amended petition added factual details but still asserted only fiduciary breach claims against appellants. The amended petition continued to seek both damages and equitable forfeiture.

Appellants replied, and Centurion Logistics filed a surreply.

The trial judge held a nonevidentiary hearing and signed an order denying appellants' dismissal motion. The order did not state the trial judge's reasons for the ruling. This appeal followed.

## II. ISSUES PRESENTED

We quote appellants' three issues, which correspond to the three steps a TCPA dismissal motion typically presents:

    1.    The amended TCPA, effective September 1, 2019, applies to this action in whole or in part because the action is based on and is in

response to the Attorneys' exercise of the right to petition, specifically the Attorneys' representation of parties in litigation adverse to Plaintiff Centurion.

2. The trial court should have dismissed Centurion's claim because Centurion failed to provide clear and specific evidence to support a prima facie case of each element of its breach-of-fiduciary-duty claim against the Attorneys, particularly with regard to the elements of proximate cause and damages or, in the alternative, fee disgorgement.

3. In addition or in the alternative, the trial court should have dismissed Centurion's claim because the Attorneys proved their affirmative defenses of attorney immunity and waiver/quasi-estoppel as a matter of law.

## III. ANALYSIS

### A. Standard of Review

This case is governed by the TCPA as amended in 2019. Under the pre-amendment TCPA, we reviewed de novo the trial court's determinations that the parties met or failed to meet their respective burdens of proof under the TCPA. *See, e.g.*, *Kirkstall Rd. Enters., Inc. v. Jones*, 523 S.W.3d 251, 253 (Tex. App.—Dallas 2017, no pet.). Although the amendments adjust the parties' burdens in some respects, they do not change the de novo appellate standard of review. Accordingly, we adhere to our prior case law in that regard. *See MobileVision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P.*, 260 S.W.3d 561, 566 (Tex. App.—Dallas 2008, no pet.) ("We may not overrule a prior panel decision of this Court absent an intervening change in the law by the legislature, a higher court, or this Court sitting en banc."); *see also Vaughn-Riley v. Patterson*, No. 05-20-00236-CV, 2020 WL

–8–

7053651, at *2 (Tex. App.—Dallas Dec. 2, 2020, no pet. h.) (mem. op.) (applying de novo standard to ruling on TCPA motion under the 2019 amendments).

**B.    Issue One:  Is Centurion Logistics' legal action based on or in response to appellants' exercise of the right to petition?**

Yes, in part.  To the extent Centurion Logistics claims that appellants breached fiduciary duties by rendering legal services to Centurion Logistics' adversaries in the Underlying Lawsuit, its claims are based on appellants' exercise of the TCPA defined right to petition.  Appellants satisfied their TCPA step one burden as to those claims.

However, Centurion Logistics has also alleged fiduciary breaches that appellants have not demonstrated were exercises of their right to petition.  The trial court correctly refused to dismiss those claims.

### 1.    Applicable Law

The TCPA authorizes a civil defendant to move to dismiss an opponent's "legal action" under certain circumstances.  *See* CIV. PRAC. & REM. CODE § 27.003(a).  That motion triggers a three-step process.  *See id.* § 27.005(b), (c), (d).

#### a.    Step One

At step one, the movant must "demonstrate[]" that the legal action is based on or in response to the movant's exercise of a statutorily defined right or certain other statutorily defined conduct.  *Id.* § 27.005(b).  This provision was amended in 2019.  Previously, the movant's burden was to "show[] by a preponderance of the evidence" that the legal action was "based on, relate[d] to, or [was] in response to"

–9–

the movant's exercise of a protected right. *See* Citizens Participation Act, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 960 (amended 2019) (current version at CIV. PRAC. & REM. CODE § 27.005(b)).

Before the 2019 amendments, the Texas Supreme Court held that the plaintiff's petition is the best and all-sufficient evidence of the nature of the action for step one purposes. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). The court said, "When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more." *Id*.

We see no reason to conclude that the legislature intended to overrule *Hersh* when it changed the step one test from "shows by a preponderance of the evidence" to "demonstrates." "Demonstrate" means to "clearly show the existence or truth of (something) by giving proof or evidence." *Demonstrate*, THE NEW OXFORD AMERICAN DICTIONARY (2001). We conclude that *Hersh* is still good law. *See* Laura Lee Prather & Robert T. Sherwin, *The Changing Landscape of the Texas Citizens Participation Act*, 52 TEX. TECH L. REV. 163, 185 (2020) (opining that *Hersh* is still good law after the 2019 amendments); *see also Vaughn-Riley*, 2020 WL 7053651, at *2 (referring to *Hersh* test in case under the 2019 amendments).

Finally, step one requires a statement-by-statement analysis when a lawsuit involves claims predicated on more than one communication. *See Duncan v. Acius Grp., LP*, No. 05-18-01432-CV, 2019 WL 4392507, at *4 n.4 (Tex. App.—Dallas Sept. 13, 2019, no pet.) (mem. op.) ("[W]e take a statement-by-statement approach

–10–

at step one."); *Morales v. Barnes*, No. 05-17-00316-CV, 2017 WL 6759190, at *3 (Tex. App.—Dallas Dec. 29, 2017, no pet.) (mem. op.) (separately analyzing, at step one, the two letters on which the plaintiff based his claim). Again nothing in the 2019 amendments changes our prior holdings, so we adhere to them and reject Centurion Logistics' suggestion that we should treat its fiduciary breach claims as a single, monolithic unit for TCPA purposes.

### b. Steps Two and Three

If the movant carries its initial burden, the burden shifts to the claimant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. CIV. PRAC. & REM. CODE § 27.005(c). If the claimant doesn't carry its burden, the trial court dismisses the claim. *See id*. § 27.005(b), (c). At step two, we consider only the evidence favoring the nonmovant. *D Magazine Partners, L.P. v. Rosenthal*, 475 S.W.3d 470, 480–81 & n.5 (Tex. App.—Dallas 2015), *aff'd in part and rev'd in part on other grounds*, 529 S.W.3d 429 (Tex. 2017).

Even if the claimant carries its step two burden, the trial court must dismiss the legal action at step three if the movant establishes an affirmative defense as a matter of law. CIV. PRAC. & REM. CODE § 27.005(d).

### 2. Applying the Law to the Facts

Appellants argue that they successfully demonstrated that Centurion Logistics' legal action is based on and in response to appellants' exercise of the right to petition. *See id*. § 27.001(4). They rely specifically on § 27.001(4)(A)(i), which

provides that "a communication in or pertaining to . . . a judicial proceeding" is an exercise of the right to petition. *See id*. § 27.001(4)(A)(i).

We begin by defining the relevant terms. The TCPA defines "communication" broadly, stating that the term "includes the making or submitting of a statement or document in any form or medium." *Id*. § 27.001(1). And the ordinary meaning of the phrase "pertaining to" is "relating directly to or concerning or having to do with." *Jetall Cos., Inc. v. Johanson*, No. 01-19-00305-CV, 2020 WL 6435778, at *3 (Tex. App.—Houston [1st Dist.] Nov. 3, 2020, no pet. h.) (mem. op.). Finally, "a judicial proceeding is 'any proceeding initiated to procure an order or decree, whether in law or in equity.'" *Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 729 (Tex. App.—Dallas 2016, pet. denied) (quoting *Judicial proceeding*, BLACK'S LAW DICTIONARY (10th ed. 2014)).

Next, we determine whether appellants carried their step one burden by demonstrating that Centurion Logistics' legal action arises from or is in response to appellants' communications pertaining to a judicial proceeding. *See* CIV. PRAC. & REM. CODE § 27.005(b). As explained below, we conclude that appellants carried their step one burden as to part, but not all, of Centurion Logistics' legal action.

### a. Appellants met step one concerning participation in the Underlying Lawsuit.

The Underlying Lawsuit was unquestionably a TCPA "judicial proceeding."[2]

Thus, to the extent Centurion Logistics asserts claims that appellants breached fiduciary duties by making communications in or pertaining to the Underlying Lawsuit, those claims are based on appellants' exercise of the TCPA right to petition. *See Youngkin v. Hines*, 546 S.W.3d 675, 680–81 (Tex. 2018) (lawyer exercised his TCPA right to petition by dictating Rule 11 agreement into the record during trial; thus, subsequent claim that lawyer thereby committed fraud satisfied TCPA step one).

We outlined Centurion Logistics' claims that appellants breached fiduciary duties by their conduct pertaining to the Underlying Lawsuit in Part I.A.2.b above. To summarize, Centurion Logistics specifically alleges the following four breaches:

- Appellants worked "in the background" on the Underlying Lawsuit for Centurion Logistics' opponents as early as July 2016.

- In February 2017, when Brenner's law firm sought to substitute into the Underlying Lawsuit for Stampede, it falsely represented that Brenner had no involvement in the Underlying Lawsuit and would not work on it. But fee requests by the firm showed that Brenner worked on the case in January 2017 and thereafter.

---

[2] The First Court of Appeals has held that a lawsuit that has gone to final judgment is no longer a "judicial proceeding" for TCPA purposes. *Russell v. Russell*, No. 01-19-00516-CV, 2020 WL 894433, at *4 (Tex. App.—Houston [1st Dist.] Feb. 25, 2020, pet. filed) (mem. op.). We disagree. Communications made in a pending lawsuit are exercises of the right to petition, *see* CIV. PRAC. & REM. CODE § 27.001(4)(A)(i), and nothing in the TCPA suggests that they cease to be exercises of that right after the lawsuit concludes.

- In or before 2017, Brenner and his firm drafted a document that purported to allow (i) Stampede to remove Centurion Logistics as a CPT member and (ii) CPT to dismiss derivative claims filed in the Underlying Lawsuit.

- Finally, Brenner disclosed to Centurion Logistics' opponents confidential information about a 2014 meeting of Marrocco, Albanese, Calce, and Brenner. Defense counsel said that Brenner would testify about that meeting in the Underlying Lawsuit or another related lawsuit. This conduct was very detrimental to Centurion Logistics in the Underlying Lawsuit because a major issue in the case was who had the right to act on Centurion Logistics' behalf.

In all four instances, Centurion Logistics bases its fiduciary breach claims on appellants' communications pertaining to a judicial proceeding.

The second and third items directly complain about appellants' communications pertaining to the Underlying Lawsuit.

The first item necessarily implies that appellants made such communications because performing legal work on a lawsuit inherently involves communications. *See* CIV. PRAC. & REM. CODE § 27.001(1) ("communication" includes "making . . . a statement or document"). For example, Centurion Logistics' live pleading quotes Brenner's time records to show his allegedly tortious work on the Underlying Lawsuit. Those records show that he participated in calls regarding a summary judgment motion, revised a summary judgment motion, and had discussions and meetings with various people about the case. Those are all communications under the TCPA's broad definition, *see id.*; *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) ("Almost every imaginable form of communication,

in any medium, is covered."), and they pertain to the Underlying Lawsuit. These allegations of specific communications also distinguish this case from a recent case in which we could not discern any communications from the record. *See White Nile Software, Inc. v. Carrington, Coleman, Sloman & Blumenthal, LLP*, No. 05-19-00780-CV, 2020 WL 5104966, at *8 (Tex. App.—Dallas Aug. 31, 2020, no pet.) (mem. op.) (movant didn't meet step one because nothing in the record showed what communications were supposedly at issue).

Finally, appellants adequately demonstrated that the fourth item involves Brenner's alleged communications regarding the Underlying Lawsuit. Although Centurion Logistics doesn't allege the date *when* Brenner allegedly revealed Centurion Logistics' confidences to its adversaries, the context demonstrates that the communications were made in conjunction with, and pertain to, the defendants' defense in the Underlying Lawsuit. Accordingly, we conclude that he did so during, and to aid their defense in, the Underlying Lawsuit.

In sum, Centurion Logistics' claims that appellants breached fiduciary duties by participating in the Underlying Lawsuit on behalf of Centurion Logistics' adversaries are based on appellants' exercise of the TCPA right to petition. Appellants carried their step one burden as to those claims.

**b.      Appellants did not satisfy step one concerning conduct other than participating in the Underlying Lawsuit.**

Centurion Logistics also alleges that appellants committed three fiduciary breaches with no obvious connection to the Underlying Lawsuit filed in June 2016:

- Appellants helped Calce and Ballengee form or reorganize numerous entities. They did "the vast majority of this work" by early April 2016, but the work continued to mid-2018.

- In spring 2016, appellants were involved in Calce and others' attempt to divest Centurion Logistics of its Union Pacific MOU and another agreement with Union Pacific. The last event Centurion Logistics alleges in this regard is a May 2016 email.

- Appellants helped a Calce entity acquire a company that owned land adjacent to the tract where the original rail terminal project was to be located. The acquisition occurred after the Underlying Lawsuit began.

A § 27.001(4)(A)(i) "judicial proceeding" means an actual, existing judicial proceeding. *Levatino*, 486 S.W.3d at 728. Thus, appellants' communications before the Underlying Lawsuit existed were not exercises of the right to petition under § 27.001(4)(A)(i). *See id.* at 729 (pre-suit demand letter not a right to petition act). Accordingly, appellants failed their step one burden as to claims based on (i) the conduct described in the second item in the immediately foregoing list and (ii) the "vast majority" of the conduct described in the first item.

As to the conduct described in the first item that allegedly postdated the Underlying Lawsuit's beginning and the conduct described in the third item, we conclude that appellants didn't demonstrate that this conduct involved communications in or pertaining to the Underlying Lawsuit. These allegations don't mention the Underlying Lawsuit, and appellants have not otherwise shown the necessary connection. The bare fact that the Underlying Lawsuit was pending while appellants were allegedly committing this conduct does not demonstrate that any

–16–

communications involved in the conduct were "in or pertaining to" the Underlying Lawsuit or any other judicial proceeding.

Appellants nonetheless argue that their alleged conduct described above amounted to an exercise of the right to petition because Centurion Logistics' trial brief argued that appellants' conduct "propelled Centurion Logistics and the Ballengee parties to litigation rather than keeping them at the settlement table to resolve their differences." We disagree. To be an exercise of the right to petition under § 27.001(4)(A)(i), a communication must be in or pertain to an actual, existing judicial proceeding. *Id.* at 728. A pre-litigation communication doesn't fit that definition, even if it provokes the subsequent litigation. *See id.*

### c. Centurion Logistics' Remaining Arguments Concerning Claims Based on Participation in the Underlying Lawsuit

Centurion Logistics proposes certain global reasons that the TCPA should not apply to its claims. We reject those arguments regarding claims based on appellants' participation in the Underlying Lawsuit and do not reach them as to the others.

First, Centurion Logistics argues that the TCPA doesn't apply to a client's fiduciary breach claim against its own attorney. It cites nothing in the statute or any cases supporting that premise. And the legislature provided that the TCPA does not apply to a laundry list of claims, and a client's fiduciary breach claim against its attorney is not among them. *See* CIV. PRAC. & REM. CODE § 27.010(a). We cannot add to the legislature's list of exemptions. *See Johnson v. Second Injury Fund*, 688

S.W.2d 107, 108 (Tex. 1985) ("The legal maxim *Expressio unius est exclusio alterius* is an accepted rule of statutory construction in this state.").

Second, Centurion Logistics argues that applying the TCPA to its claims violates the Texas Constitution's Open Courts Clause. The TCPA requires a claimant to assemble its proof quickly and limits the discovery that can be performed once a motion is filed. *See* CIV. PRAC. & REM. CODE § 27.003(b), (c); *id.* § 27.004. Centurion Logistics argues that the TCPA thus unconstitutionally burdens its constitutional right to redress, particularly because claims against lawyers typically must be supported with expert testimony.

We reject Centurion Logistics' constitutional challenge. We presume statutes are constitutional. *Preston State Bank v. Willis*, 443 S.W.3d 428, 433 (Tex. App.—Dallas 2014, pet. denied). Texas appellate courts have upheld the TCPA's discovery limitations. *See, e.g.*, *Landry's, Inc. v. Animal Legal Defense Fund*, 566 S.W.3d 41, 68 (Tex. App.—Houston [14th Dist.] 2018, pet. granted). And they have upheld statutes requiring expert reports early in medical malpractice cases. *See, e.g.*, *Sutker v. Simmons*, No. 05-18-00698-CV, 2019 WL 3001034, at *5 (Tex. App.—Dallas July 10, 2019, pet. denied) (mem. op.); *Ledesma v. Shashoua*, No. 03-05-00454-CV, 2007 WL 2214650, at *9 (Tex. App.—Austin Aug. 3, 2007, pet. denied) (mem. op.). Since Centurion Logistics adduced evidence by three expert witnesses, and assuming the TCPA may in some cases require nonmovants to produce expert

testimony at step two, we reject Centurion Logistics' premise that the requirement violates the Open Courts Clause here.

Finally, Centurion Logistics argues that the TCPA does not apply to its claims based on appellants' providing legal services to Centurion Logistics' adversaries in the run-up to the Underlying Lawsuit. We agree with that premise, as discussed above.

### 3. Conclusion

We sustain appellants' first issue in part, holding that they satisfied TCPA step one as to Centurion Logistics' fiduciary breach claims based on appellants' participating in the Underlying Lawsuit for Centurion Logistics' adversaries. We thus proceed to the remaining TCPA analysis as to only those claims and affirm the denial of appellants' TCPA motion regarding Centurion Logistics' other claims.

**C. Issue Two: Did Centurion Logistics produce clear and specific evidence sufficient to establish a prima facie case regarding its participation in the Underlying Lawsuit claims?**

No, because Centurion Logistics did not produce clear and specific evidence that (i) appellants' participation in the Underlying Lawsuit caused Centurion Logistics any injury or (ii) Centurion Logistics was entitled to a fee forfeiture or disgorgement remedy based on that conduct.

### 1.     Applicable Law

Once a TCPA movant satisfies step one, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question.  CIV. PRAC. & REM. CODE § 27.005(c).

"Clear" means unambiguous, sure, or free from doubt.  *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).  "Specific" means explicit or relating to a particular named thing.  *Id.*  A prima facie case is the minimum amount of evidence necessary to support a rational inference that a fact is true.  *Id.*

Bare, baseless opinions do not meet the clear and specific evidence requirement.  *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) (orig. proceeding).  Similarly, conclusory statements are not probative and will not suffice to establish a prima facie case.  *Dobrott v. Jevin, Inc.*, No. 05-17-01472-CV, 2018 WL 6273411, at *6 (Tex. App.—Dallas Nov. 30, 2018, no pet.) (mem. op.).

A fiduciary breach claim's elements are (i) a fiduciary relationship existed between the plaintiff and defendant; (ii) the defendant breached its fiduciary duty to the plaintiff; and (iii) the defendant's breach injured the plaintiff or benefited the defendant.  *Anderton v. Cawley*, 378 S.W.3d 38, 51 (Tex. App.—Dallas 2012, no pet.).  A fiduciary breach claimant must prove proximate causation to recover damages.  *See Bos v. Smith*, 556 S.W.3d 293, 303 (Tex. 2018).

Alternatively, a disloyal fiduciary can be required to disgorge any benefit it received by its breach. *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942). And an attorney who commits a clear and serious violation of his or her duty to a client can be required to forfeit some or all of his or her fees for the matter. *Burrow v. Arce*, 997 S.W.2d 229, 242 (Tex. 1999).

## 2. Applying the Law to the Facts

Appellants argue that Centurion Logistics produced no evidence that appellants' participation in the Underlying Lawsuit on behalf of Centurion Logistics' adversaries caused Centurion Logistics any injury. We agree.

Centurion Logistics' appellate brief doesn't argue that it produced clear and specific evidence that appellants' aiding Centurion Logistics' adversaries in the Underlying Lawsuit caused Centurion Logistics any injury. Neither did its trial court response.

We have reviewed Centurion Logistics' evidence ourselves, and we conclude that there is no clear and specific evidence that appellants' alleged misconduct in and regarding the Underlying Lawsuit injured Centurion Logistics. We find only a conclusory and nonprobative statement in Marrocco's declaration (and a similar one in Albanese's declaration), that says:

> . . . I also contend that if it had not been for the defendant attorney's misconduct as described above, the various lawsuits in which we were involved with Calce, Ballengee, and their related individuals and entities, including the Dallas County Lawsuit, would have been resolved in Centurion Logistics' favor.

These speculative and conclusory statements did not carry Centurion Logistics' step two burden as to the causation element.

This leaves Centurion Logistics' claim for a disgorgement or fee forfeiture remedy. Specifically, Centurion Logistics sought to recover (i) all fees Centurion Logistics paid appellants, (ii) all fees appellants received from other parties for work adverse to Centurion Logistics, and (iii) any other secret gain or benefit appellants derived from their fiduciary breaches. For three reasons, we conclude that Centurion Logistics did not produce clear and specific evidence to support these claimed remedies.

First, Centurion Logistics produced no evidence that appellants committed any fiduciary breaches while earning the fees Centurion Logistics paid them, so there is no clear and specific evidence that Centurion Logistics is entitled to recover those fees. Specifically, Centurion Logistics alleges that appellants' fiduciary breaches began in late 2015 but its evidence doesn't show any payments to appellants after December 2014. Next, Centurion Logistics argues it should be allowed to recover the fees it paid appellants because their work for Centurion Logistics was "completely undermined" by appellants' work for Centurion Logistics' adversaries. We disagree. *Cf. Gregory v. Porter & Hedges, LLP*, 398 S.W.3d 881, 886–87 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (client could not recover attorney's fees paid for first representation because client's claims arose exclusively from a

–22–

second representation). Thus, Centurion Logistics did not produce clear and specific evidence of an entitlement to fee forfeiture regarding the fees it paid appellants.

Second, regarding the fees appellants received from other parties for legal work that allegedly breached appellants' fiduciary duties to Centurion Logistics, courts have held that fee forfeiture does not apply to fees a lawyer received from someone other than the aggrieved client. *See, e.g.*, *id.* at 885–86; *Elizondo v. Krist*, 338 S.W.3d 17, 25 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 415 S.W.3d 259 (Tex. 2013); *Swank v. Cunningham*, 258 S.W.3d 647, 672–74 (Tex. App.—Eastland 2008, pet. denied). We agree with those courts. Thus, Centurion Logistics cannot recover those fees under a forfeiture theory.

Finally, Centurion Logistics produced no evidence that appellants received any benefit from their alleged fiduciary breaches other than the fees they received for their legal work in the Underlying Lawsuit. We have held that those fees are not subject to equitable forfeiture. Thus, Centurion Logistics cannot recover them under a more general equitable theory. *Cf. Garcia-Udall v. Udall*, 141 S.W.3d 323, 331 (Tex. App.—Dallas 2004, no pet.) ("[A] more specific statute controls over a more general one.").

### 3. Conclusion

Centurion Logistics failed to carry its step two burden regarding its claims against appellants for participating in the Underlying Lawsuit. Accordingly, the trial court erred by failing to dismiss those claims.

**D.    Issue Three:  Did appellants establish affirmative defenses?**

Given our prior holdings, we need not and do not address appellants' third issue in which they argue that they established the affirmative defenses of attorney immunity, waiver, and quasi-estoppel.

## IV.  DISPOSITION

For the foregoing reasons, we (i) reverse the trial court's order denying appellant's TCPA motion to the extent the trial court failed to dismiss Centurion Logistics' claims based on appellants' participation in the Underlying Lawsuit on behalf of entities other than Centurion Logistics, (ii) render judgment dismissing those claims with prejudice, (iii) remand the case for further proceedings consistent with this opinion, including an award of relief under TCPA § 27.009; and (iv) affirm the remainder of the trial court's order.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

200308F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JULES S. BRENNER; CLARK HILL PLC ALSO DOING BUSINESS AS CLARK HILL STRASBURGER; AND STRASBURGER & PRICE, LLP, Appellants

No. 05-20-00308-CV          V.

CENTURION LOGISTICS LLC DIRECTLY AND DERIVATIVELY ON BEHALF OF CENTURION PECOS TERMINAL LLC, Appellee

On Appeal from the 44th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-15964. Opinion delivered by Justice Whitehill. Justices Schenck and Browning participating.

In accordance with this Court's opinion of this date, we **AFFIRM** in part and **REVERSE** in part the trial court's February 14, 2020 Order Denying Defendants' Motion to Dismiss Pursuant to TCPA.

We **REVERSE** the order to the extent it fails to dismiss appellee Centurion Logistics LLC Directly and Derivatively on Behalf of Centurion Pecos Terminal LLC's claims against appellants Jules S. Brenner, Clark Hill PLC Also Doing Business As Clark Hill Strasburger, and Strasburger & Price, LLP for appellants' participation in an underlying lawsuit, *Marrocco et al. v. Ballengee et al.*, Cause No. DC-16-07706 in the 44th Judicial District Court of Dallas County, on behalf of entities other than Centurion Logistics LLC, and we **RENDER** judgment that those claims are **DISMISSED WITH PREJUDICE**.

In all other respects, the trial court's order is **AFFIRMED**.

We **REMAND** this cause to the trial court for further proceedings consistent with the opinion, including consideration of appellants' request for relief under TEX. CIV. PRAC. & REM. CODE § 27.009.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered December 14, 2020.